UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RACHEL MCLAIN,  ) Case No. SACV 10-1108 JC
         Plaintiff, )
         ) MEMORANDUM OPINION
     v. )
      )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security, )
         Defendant. )

**I. SUMMARY**

On July 27, 2010, plaintiff Rachel McLain ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 3, 2010 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On July 12, 2007, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") at 9). Plaintiff asserted that she became disabled on December 1, 2006, due to Bipolar Disorder and related symptoms. (AR 123). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert, a vocational expert, and a lay witness on August 25, 2009. (AR 17).

On September 25, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 9, 16). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: bipolar disorder with depression and a history of substance abuse (AR 11); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 11-12); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to simple repetitive tasks (AR 12); (4) plaintiff has no past relevant work (AR 15); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 15); and (6) plaintiff's allegations regarding her limitations were not entirely credible (AR 13, 14).

The Appeals Council denied plaintiff's application for review. (AR 1).

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in

significant numbers in the national economy? If so, the
claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

## IV. DISCUSSION

### A. The ALJ Was Not Required to Obtain Testimony From a Vocational Expert at Step Five

Plaintiff argues that since plaintiff suffers only non-exertional limitations, the ALJ erred at step five by not obtaining and considering additional testimony from a vocational expert.[2] (Plaintiff's Motion at 2-5). The Court disagrees.

#### 1. Pertinent Law

At step five of the sequential evaluation process, the Commissioner has the burden to demonstrate that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Tackett, 180 F.3d at 1100-01 (citations omitted).

---

[2]At the administrative hearing, the vocational expert testified only that plaintiff had no past relevant work – a step four issue. (AR 25).

4

When a claimant suffers only exertional (strength-related) limitations, the ALJ must consult the Grids. Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir.), as amended (2006). When a claimant suffers only non-exertional limitations, the Grids (which are predicated solely on a claimant's exertional limitations) are generally inappropriate and the ALJ must rely on other evidence.[3] Id. When a claimant suffers from both exertional and nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of disability with respect to exertional limitations. See Lounsburry, 468 F.3d at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). If so, the claimant must be awarded benefits. Cooper, 880 F.2d at 1155. If not, and if the claimant suffers from significant and sufficiently severe non-exertional limitations, not accounted for in the Grids, the ALJ must take the testimony of a vocational expert. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

**2.  Analysis**

Plaintiff essentially contends that the ALJ's non-disability finding at step five was not supported by substantial evidence because the ALJ relied on the Grids – specifically, 20 C.F.R. Part 404, Subpart P, Appendix 2 Section 204.00 ("Section 204.00") – rather than testimony from a vocational expert. (Plaintiff's Motion at 2-5). Plaintiff's argument lacks merit.

First, contrary to plaintiff's contention, the fact that plaintiff suffers only non-exertional limitations "does not automatically preclude application of the grids." Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 577 (9th Cir. 1988); Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988). "If the grids

---

[3]An ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to the make the Grids inapplicable to the particular case. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two. Id.

accurately and completely describe a claimant's particular impairments, an ALJ may apply the grids instead of taking testimony from a vocational expert." Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1988)). Thus, even where a claimant's limitations are entirely non-exertional, a vocational expert's testimony is not required unless the ALJ determines that such non-exertional limitations are "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation." Hoopai, 499 F.3d at 1076 (citation omitted); see Desrosiers, 846 F.2d at 577 ("A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable."). It is within the ALJ's province to determine whether a claimant's non-exertional limitations are sufficiently severe to obviate the need for testimony from a vocational expert. Sam v. Astrue, 2010 WL 4967718, at *11 (E.D. Cal. Dec. 1, 2010) (citing Desrosiers, 846 F.2d at 577).

      Second, here, substantial evidence supports the ALJ's finding that plaintiff's non-exertional limitation to simple, repetitive tasks "[had] little or no effect" on plaintiff's ability to do "unskilled work at all exertional levels."[4] (AR 15). As the ALJ noted, progress records from plaintiff's treating psychiatrist reflect that plaintiff's psychological symptoms improved with medication without any reported adverse side effects, and that plaintiff's mental condition remained stable when she abstained from using drugs and alcohol and was compliant with her prescribed medication.[5] (AR 14) (citing Exhibits 5F [AR 238-60], 13F [AR

---

[4]Plaintiff does not challenge the ALJ's assessment that she has the residual functional capacity to perform the full range of work at all exertional levels. (Plaintiff's Motion at 2-4).

[5]Although plaintiff's treating psychiatrist opined in a report dated July 30, 2007, that plaintiff continued to experience psychological symptoms "even with sobriety," the ALJ properly
(continued...)

349-50, 353-69], 17F [AR 388-96]). In addition, the testifying medical expert opined that, based on his review of the medical evidence, plaintiff "did well" when she remained clean and sober, and medicated. (AR 20-23). As the ALJ also noted, a state-agency reviewing psychiatrist opined that the medical evidence supported a finding that plaintiff could do jobs involving simple, repetitive tasks. (AR 14) (citing Exhibit 11F [AR 339]).

Finally, where a claimant is limited to simple, repetitive tasks, but otherwise retains the ability to perform a full range of work at all exertional levels, the grids accurately and completely describe the claimant's particular impairments. See Sam, 2010 WL 4967718, at *11 ("An individual with solely non-exertional limitations who is capable of performing the full range of unskilled work is capable of performing jobs that exist in significant numbers [in the national economy].") (citing 20 C.F.R. Part 404, Subpart P, Appendix 2 Section 203.00(a)); id. ("The ability to perform simple, repetitive tasks is consistent with unskilled work.") (citing Social Security Ruling ("SSR") 85-15). Therefore, here, the ALJ properly relied on Section 204.00 to find plaintiff not disabled.[6] See, e.g., Hoopai, 499 F.3d at 1076-77 (holding that ALJ properly relied on the Grids where

---

[5](...continued)
rejected such opinions as unsupported by the doctor's own treatment notes. (AR 14); see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (A discrepancy between a physician's notes and recorded observations and opinions and the physician's assessment of limitations is a clear and convincing reason for rejecting the opinion.); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes).

[6]Plaintiff also suggests that since the ALJ found her bipolar disorder with depression and history of substance abuse to be "severe" impairments at step two, plaintiff's consequent limitation to simple, repetitive tasks constitutes a "significant nonexertional limitation" which would necessitate the use of testimony from a vocational expert at step five. (Plaintiff's Motion at 3-4). Nonetheless, the Ninth Circuit has rejected just such an argument. See Hoopai, 499 F.3d at 1076 ("[A] step-two determination that a non-exertional impairment is severe does not require that the ALJ seek the assistance of a vocational expert at step five.").

substantial evidence supported the ALJ's conclusion that the claimant's depression was not sufficiently severe to limit the range of work claimant could do); Sam, 2010 WL 4967718, at *10-*11 (ALJ's reliance on Section 204.00 to find plaintiff not disabled was proper where ALJ determined that plaintiff's limitation to jobs involving simple, repetitive tasks had little or no effect on plaintiff's ability otherwise to perform a full range of work at all exertional levels.); Hansen v. Astrue, 2008 WL 2705594, at *3-*5 (W.D. Wash July 7, 2008) (ALJ was not required at step five to consult a vocational expert where claimant had no exertional limitations, and substantial evidence supported ALJ's finding that claimant's nonexertional impairments which limited claimant to simple, repetitive tasks (*i.e.*, "reading disorder, disorder of written expression, and adjustment disorder with mixed anxiety and depressed mood") "were not sufficiently severe such that they significantly affect[ed] [claimant's] ability to work.").

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

**B. The ALJ Properly Evaluated the Medical Opinion Evidence**

**1. Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining

///
///
///

physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[7] See id.

"The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998). However, while "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ] may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p; see also 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence. . . ."); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008)[8] ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions.").

### 2. Background

On November 15, 2007, Dr. Greta F. Johnson, a state-agency physician, reviewed the medical evidence in plaintiff's file and completed a Mental Residual Functional Capacity Assessment form ("November 15 form"). In the Summary Conclusions section of the November 15 form, Dr. Johnson checked boxes which

---

[7]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

[8]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

reflect that plaintiff had moderate limitations in concentration, persistence and pace, specifically the ability to (i) understand and remember detailed instructions; (ii) carry out detailed instructions; (iii) maintain attention and concentration for extended periods; (iv) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (v) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 337-38). Dr. Johnson also checked boxes indicating that plaintiff had moderate limitations in social functioning, specifically the ability to accept instructions and respond appropriately to criticism from supervisors, and moderate limitations in the ability to adapt (*i.e.*, respond appropriately to changes in the work setting). (AR 338). In the Functional Capacity Assessment section of the November 15 form, Dr. Johnson opined that plaintiff retained adequate function to do simple, repetitive tasks. (AR 339).

### 3. Analysis

Plaintiff contends that the ALJ failed properly to consider Dr. Johnson's opinions. (Plaintiff's Motion at 5-9). More specifically, plaintiff argues that the ALJ erred by failing to mention Dr. Johnson's opinions regarding plaintiff's moderate limitations in social functioning and the ability to adapt. (Plaintiff's Motion at 6). The Court disagrees.

First, simply because the ALJ did not individually reference each of the moderate mental limitations expressed in the November 15 form does not mean he failed to consider such evidence. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]"). The ALJ was not required to discuss every piece of evidence in the record. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). Here, the ALJ noted that the record contained the November 15 form and the ALJ expressly adopted Dr. Johnson's overall

opinion that plaintiff retained adequate function to do simple repetitive tasks. (AR 14-15) (citing Exhibit 11F [AR 337-39]).

Second, the ALJ properly accounted for any of the limitations reflected in the Summary Conclusions section of the November 15 form by adopting the state-agency psychiatrist's overall opinion stated in the form's Functional Capacity Assessment section (*i.e.*, that plaintiff retained adequate function to do simple repetitive tasks). (AR 339). The ALJ was entitled to rely on Dr. Johnson's narrative interpretation of her findings, rather than the underlying, check-the-box summary conclusions, and resolve any ambiguity between the two. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (ALJ resolves conflicts and ambiguities in the evidence); Reddick, 157 F.3d at 722-23 (ALJ must "fully account[] for the context of materials or all parts of the testimony and reports"); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

Third, to the extent he rejected Dr. Johnson's opinions regarding moderate limitations in plaintiff's social functioning and ability to adapt, the ALJ properly did so based on specific evidence in the medical record. As discussed above and addressed at length in the ALJ's decision, the medical records and testimony from the medical expert show that plaintiff's mental condition remained stable when she abstained from using drugs and alcohol and was compliant with her prescribed medication. (AR 14, 20-23) (citing Exhibits 5F [AR 238-60], 13F [AR 349-50, 353-69], 17F [AR 388-96]). The ALJ's detailed discussion and evaluation of plaintiff's treatment records and the medical opinion evidence adequately supported rejecting any of Dr. Johnson's conflicting opinions. See Sawyer, 303 Fed. Appx. at 455; cf. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden of rejecting a treating physician's opinion by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted);

Magallanes v. Bowen, 881 F.2d 747, 751, 755 (9th Cir. 1989) (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).

Finally, even assuming the ALJ erred by not individually referencing each of the moderate mental limitations expressed in the November 15 form, any such error was harmless. Moderate mental functional limitations – specifically limitations in social functioning and adaptation – are not *per se* disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks. See, e.g., Rogers v. Commissioner of Social Security, 2011 WL 445047, at *11-*12 (E.D. Cal. Jan. 25, 2011) (residual functional capacity assessment that limits claimant to simple, repetitive tasks adequately accounts for moderate limitations in social functioning); Koehler v. Astrue, 283 Fed. Appx. 443, 445 (9th Cir. 2008) (ALJ's finding that claimant lacked a "severe" mental impairment was proper even though claimant had "moderate" limitation in the "ability to respond to changes in the workplace setting"). Therefore, since the ALJ's residual functional capacity assessment included a limitation to simple, repetitive tasks, the addition of moderate limitations on social functioning and adaptation would not have changed the ALJ's ultimate nondisability determination. See Stout, 454 F.3d at 1055 (An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.").

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 3, 2011

                                               /s/
                                    Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE